James W. MACK, Jr.

v.

**W.R. GRACE COMPANY; Vic Annapole, Individually and in His Official Capacity as Plant Manager; and Edward Kinsel, Individually and in His Official Capacity as Supervisor of Quality Control.**

**Civ. No. C82–561.**

United States ·District Court,
N.D. Georgia,
Atlanta Division.

Oct. 13, 1983.

James W. Mack, Jr., pro se.

David M. Brown, Michael W. Higgins, William W. Gardner, Gambrell & Russell, Atlanta, Ga., for defendants.

## ORDER

ORINDA D. EVANS, District Judge.

■ This employment discrimination case, brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and pursuant to the Civil Rights Act of 1870, 42 U.S.C. §§ 1981, 1983, 1985, and 1986, is before the Court on Plaintiff's and Defendants' cross-motions for summary judgment. Fed.R.Civ.P. 56. The Defendants move in the alternative for an order to compel the Plaintiff to answer interrogatories and to produce documents and for an award of costs and attorneys' fees incurred in obtaining the order. Fed. R.Civ.P. 37(a). Having determined to grant summary judgment for the Defendants and to deny summary judgment for the Plaintiff on most of Mr. Mack's claims, the Court dismisses his claims except for his § 1981 claims of discrimination with respect to salary, promotion, and training opportunities and his § 1985(3) claim of unlawful conspiracy to effect that discrimination. Because the Court's ruling does not dispose of all the issues in this case, the Court grants the Defendants' alternative motion to compel discovery and orders the parties to submit briefs on the Defendants' motion for an award of expenses and attorneys' fees.[1]

## I. PROCEDURAL HISTORY

The Plaintiff, James W. Mack, Jr., was employed in the Dewey and Almy Chemical Division of the W.R. Grace Company as a second-shift laboratory technician, with work hours from 4:00 p.m. to 12:00 a.m., from June 30, 1976 to April 14, 1978. The division manufactures can sealing components, latex-based sealants, and carbon dioxide absorbents. Mr. Mack was responsible for performing quality tests on incoming raw materials and on finished materials, issuing "batch cards" directing the production crew how to blend batches of product, performing adjustment tests on finished materials to bring them within specifications, approving finished products for shipment to customers, directing the production crew how to work usable out-of-specification materials back into production, and performing special projects as assigned by his supervisors. Mr. Mack was directly supervised by the Technical Supervisor. Until July 1977, this was Steve LaPierre. In July 1977, Edward A. Kinsel, one of the individual Defendants, succeeded Mr. LaPierre as Technical Supervisor. Mr. Mack was under the observation of the Second Shift Production Supervisor, Mark J. Hancock, and of the Plant Manager, Victor I. Anapolle,[2] who is also named as a Defendant. On April 14, 1978, Mr. Mack was discharged for fabricated test results, unexcused absences, tardiness, poor attitude, poor work performance, and lagging work schedules.

Mr. Mack filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on April 20, 1978, alleging that the company discharged him because of his race. Three years later, while the EEOC investigation of his charge was still pending, he requested a Right to Sue letter. The EEOC sent him a Notice of Right to Sue on November 5, 1981, and simultaneously terminated its processing of

---

1. Once a court enters an order compelling discovery, it must then determine whether an award of costs and attorneys' fees should be made and the appropriate amount of such an award. Fed.R.Civ.P. 37(a)(4); 4A J. Moore, J. Lucas & D. Epstein, Federal Practice ¶ 37.02[10.-1] & n. 1 (2d ed. 1983). *E.g., Merritt v. International Brotherhood of Boilermakers,* 649 F.2d 1013, 1017 (5th Cir.1981).

2. Mr. Anapolle's name is misspelled in the style of the case.

his charge. The record does not show, however, when Mr. Mack received his Notice of Right to Sue.

Mr. Mack filed his complaint in this Court on February 9, 1982, after having filed on February 5, 1982 a copy of his Notice of Right to Sue. He alleges that he was discharged from W.R. Grace Company because of his race and his opposition to the Defendants' unlawful employment practices; that Plant Manager Anapolle and Technical Supervisor Kinsel acted in concert with Jim Hurst, a company employee, Second Shift Production Supervisor Mark J. Hancock, and "others presently unknown" to remove him; that he was discriminated against with respect to salary, promotional, and training opportunities; that the reasons given for his discharge were pretexts for discrimination; that the Defendants made his work appear unsatisfactory by reporting that his test results were inaccurate and that he performed tests incorrectly; that he was discharged in retaliation for reporting this to his supervisors, Victor Anapolle and Edward Kinsel, and to another supervisor, Elmer Gould; and that his workload was as great or greater than that of the first shift, although he worked alone on the second shift and three lab technicians worked on the first shift. He seeks actual and punitive damages in the amount of $300,000, as well as unspecified declaratory and injunctive relief.

The corporate and individual Defendants maintain a joint defense. They raise issues of timeliness, the sufficiency of Mr. Mack's pleadings, and exhaustion of administrative remedies, in addition to disputing the merits of Mr. Mack's claims. The Court considers each of Mr. Mack's statutory causes of action in turn. Before turning to the individual statutory causes of action, however, the Court reviews the principles of summary judgment law that guide its decisionmaking.

## II. PRINCIPLES GOVERNING SUMMARY JUDGMENT IN EMPLOYMENT DISCRIMINATION CASES

■ Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). The Court should grant summary judgment only if the party seeking judgment demonstrates that there is no genuine issue as to any material fact, when all evidence is viewed in the light most favorable to the party opposing the motion. *Morrison v. Washington County*, 700 F.2d 678, 682 (11th Cir.1983). In ruling on the motion for summary judgment, the Court may not decide issues of fact. *Clemons v. Dougherty County*, 684 F.2d 1365, 1369 (11th Cir.1982). The Plaintiff's and the Defendants' motions for summary judgment must be reviewed independently, *see, e.g., Hosemann v. Technical Materials, Inc.,* 554 F.Supp. 659, 663 n. 12 (D.R.I.1982), and in the case of each, all reasonable doubts about the facts are to be resolved and all inferences from the facts are to be drawn in favor of the party opposing the motion. *Impossible Electronics Techniques, Inc. v. Wackenhut Protective Services, Inc.,* 669 F.2d 1026, 1031 (5th Cir.1982) (Former Fifth Circuit case). The party opposing the motion for summary judgment need not respond to it with affidavits or other evidence until the moving party carries its burden of showing that no material fact is in dispute. *Id.* Once the moving party makes a convincing showing, however, the opposing party must demonstrate by receivable facts that a real controversy exists. *Mandalay Shores Cooperative Housing Association, Inc. v. Pierce,* 667 F.2d 1195, 1197 (5th Cir.1982) (Former Fifth Circuit case), *quoting Bruce Construction Corporation v. United States,* 242 F.2d 873, 875 (5th Cir.1957). At that point, mere allegations unsupported by evidence cannot defeat summary judgment. *E.g., Pines v. Warnaco, Inc.,* 706 F.2d 1173, 1178 (11th Cir.1983).

■ Courts are properly cautious about granting summary judgment in em-

ployment discrimination cases when issues of discriminatory intent are raised because intent is often difficult to discern in advance of trial. *Bullard v. Omi Georgia, Inc.*, 640 F.2d 632, 634 (5th Cir.1981); *Hayden v. First National Bank of Mount Pleasant*, 595 F.2d 994, 997 (5th Cir.1979). Nonetheless, when an employer makes a convincing showing that it discharged an employee for non-discriminatory reasons and the discharged employee introduces no evidence that the non-discriminatory reasons proffered by the employer are pretextual and no evidence from which an inference of pretext can rationally be drawn, summary judgment for the employer is appropriate. *Bleakley v. Jekyll Island— State Park Authority*, 536 F.Supp. 236, 246 (S.D.Ga.1982); *Oaks v. City of Fairhope*, 515 F.Supp. 1004, 1009 & n. 1 (S.D. Ala.1981); *Womack v. Shell Chemical Co.*, 514 F.Supp. 1062, 1066 (S.D.Ala.1981). A genuine issue of fact precluding summary judgment is one that can be maintained by substantial evidence. *Lipschutz v. Gordon Jewelry Corp.*, 373 F.Supp. 375, 383 (S.D. Tex.1974). The discharged employee can not then rely on allegations in his complaint, Fed.R.Civ.P. 56(e); *International Woodworkers of America, AFL–CIO, CLC v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1271 (4th Cir.1981), or on prom-

ises or speculations that he may be able to prove discriminatory intent at trial,[3] to withstand the employer's convincing showing that no unlawful discrimination occurred. He must be prepared to counter the employer's showing with an adequate offer of proof that the employer's reasons for discharge are in fact a pretext for discrimination. *Cartagena v. Secretary of Navy*, 618 F.2d 130, 135, 137 (1st Cir.1980) (per curiam); *Hosemann v. Technical Materials, Inc.*, 554 F.Supp. 659, 664 (D.R.I. 1982).

With these principles in mind, the Court turns to an examination of Mr. Mack's statutory causes of action.

### III. THE TITLE VII CLAIMS [4]

■ Before addressing the Defendants' arguments, the Court finds it necessary to discuss whether Mr. Mack's Title VII claims were timely filed. The record does not reveal when Mr. Mack received from the EEOC notice of his right to sue. This date determines whether his Title VII claims were timely filed. Although the Court thus can not ascertain whether Mr. Mack filed his complaint within ninety-three days after he received notice of his right to sue,[5] the record shows that he filed a copy of his notice letter in the district court ninety-two days after it was sent to

---

**3.** *Compare Mitchell v. General Electric Co.*, 689 F.2d 877, 879 (9th Cir.1982) (per curiam) (if court were to reach merits of claim that plaintiff was discriminatorily denied promotion, plaintiff's unsubstantiated allegations would be insufficient to oppose employer's evidentiary showing to the contrary).

**4.** The pertinent provisions of Title VII are found at 42 U.S.C. § 2000e–2 (1976):

(a) It shall be unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an

employee, because of such individual's race, color, religion, sex, or national origin.

\* \* \* \* \* \*

(d) It shall be an unlawful employment practice for any employer ... controlling apprenticeship or other training or retraining, including on-the-job training programs to discriminate against any individual because of his race, color, religion, sex, or national origin in admission to, or employment in, any program established to provide apprenticeship or other training.

**5.** *See* Fed.R.Civ.P. 6(e). When a party is required to file a civil action within a prescribed period after service of notice by mail, three days is added to the prescribed period. Under 42 U.S.C. § 2000e–5(f)(1), an employee who has filed a charge of discrimination with the EEOC may bring a civil action against his employer within ninety days after the EEOC gives him notice of his right to sue. Thus, Mr. Mack had ninety-three days from receipt of the notice letter to file a complaint.

him. This filing was certainly made within the allotted period. Four days later he filed a complaint. It is entirely possible that the complaint itself was filed within ninety-three days of Mr. Mack's receipt of the EEOC notice letter. In this *pro se* action, though, the Court considers Mr. Mack's filing of the notice letter, instead of a complaint, within the time limits for filing a complaint, as satisfying the timely filing requirement of 42 U.S.C. § 2000e–5(f)(1). Accordingly, the Court finds it unnecessary to determine when Mr. Mack received his notice of right to sue.

Mr. Mack's Title VII claims are essentially twofold. He alleges (1) that he was denied salary, promotion, and training opportunities and (2) that he was eventually discharged because of his race and for confronting his supervisors with the accusation that his work was made to appear unsatisfactory. The Defendants object to Mr. Mack's assertion of salary, promotion, and training ·claims because these claims were not presented to the EEOC and were not within the reasonable scope of the EEOC investigation. This circuit recognizes that "the 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970). The allegations in the judicial complaint "may encompass any kind of discrimination like or related to allegations contained in the [EEOC] charge and growing out of such allegation during the pendency of the case before the Commission." *King v. Georgia Power Co.*, 295 F.Supp. 943, 947 (N.D.Ga.1968), *quoted with approval in Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 928 (11th Cir.1983) *and in Sanchez*, 431 F.2d at 466. Mr. Mack's EEOC charge complained that he had been wrongly accused of poor work performance, that the first-shift lab technicians had approved those products that customers returned, and that he had to perform more work, alone and without supervision, than the

three lab technicians on the first shift performed together.

 In their brief supporting their motion for summary judgment, the Defendants assert that the EEOC did not investigate the company's internal employment practices or seek voluntary compliance to eliminate any of those practices. The Court accepts that the EEOC did not investigate Mr. Mack's salary, promotion, and training claims. This, though, is not the sole test for deciding whether Mr. Mack can include these claims in his judicial complaint. If the Court finds that investigation of these employment practices was within the reasonable scope of an investigation of Mr. Mack's articulated claims, then the Court may consider these additional claims. *Phillips v. Smalley Maintenance Services, Inc.*, 711 F.2d 1524, 1529 (11th Cir.1983). Discrimination with regard to salary, promotions, and training is not so obviously related to discriminatory discharge, however, that the Court could expect an EEOC investigation of a discharge to extend to such claims. In this case, though, the Court's decision that Mr. Mack's promotion, salary, and training claims do not fall within the reasonable ambit of an EEOC investigation does not deprive him of judicial consideration of these claims. Mr. Mack has invoked 42 U.S.C. § 1981 as an alternate statutory basis for his claims. Though he is barred from seeking back pay by the applicable statute of limitations, he may seek other relief on these claims pursuant to § 1981.[6]

 In deciding whether Mr. Mack was discharged in retaliation for protected activity and because of his race, the Court has considered the pleadings and evidence in the light of the burdens of proof outlined in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–1825, 36 L.Ed.2d 668 (1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–56, 101 S.Ct. 1089, 1093–1095, 67 L.Ed.2d 207 (1981). This circuit has adapted this test more par-

---

**6.** *See* the discussion of Mr. Mack's § 1981 claims.

ticularly to retaliatory discharge and discriminatory discharge cases. To make out a *prima facie* case of retaliatory discharge, an employee must show that he engaged in statutorily protected activity, that he was discharged, and that there was a causal link between the protected activity and the discharge.[7] *Walker v. Ford Motor Company,* 684 F.2d 1355, 1359 n. 3 (11th Cir. 1982); *Jones v. Lumberjack Meats, Inc.,* 680 F.2d 98, 101 (11th Cir.1982). The burden then shifts to the employer to show a legitimate non-retaliatory reason for the firing. *Jones,* 680 F.2d at 101. As in *McDonnell Douglas* and *Burdine,* the employee may then show that the allegedly legitimate reason is a pretext for discrimination. *Id.* An employee establishes a *prima facie* case of discriminatory discharge by showing that he is a member of a protected group, that he was qualified for the job from which he was discharged, and that the employer afterwards replaced him with an employee who did not belong to the same protected group.[8] *Marks v. Prattco, Inc.,* 607 F.2d 1153, 1155 & n. 1 (5th Cir. 1979). Thereafter, the burdens of proof outlined in *McDonnell Douglas* and *Burdine* apply. *Id.* at 1155 n. 1.

### A. Retaliatory Discharge

■ The Court denies Mr. Mack summary judgment on his claim of retaliatory discharge and grants summary judgment to the Defendants on that claim because Mr. Mack has failed to make out a *prima facie* case to support his claim, while the Defendants have demonstrated that Mr. Mack was discharged for non-retaliatory reasons. Mr. Mack alleged that he was fired in retaliation for informing his supervisors that, for discriminatory reasons, his

work was made to appear unsatisfactory. Had Mr. Mack confronted his supervisors with this charge of discrimination, his accusation would have been protected opposition to an unlawful employment practice under 42 U.S.C. § 2000e–3(a). He failed to adduce evidence, however, that he made such an accusation and, of course, likewise failed to show that he was discharged in response to his accusation. Moreover, the Defendants have provided convincing evidence that Mr. Mack's discharge followed from his poor job performance. The Court considers that evidence in relation to Mr. Mack's claim of discriminatory discharge.

### B. Discriminatory Discharge

The Defendants first oppose Mr. Mack's discriminatory discharge claim on the ground that he did not meet his initial burden of proof. They assert that he did not show that he was qualified for his job, that he met the normal requirements of the job, or that he was discharged because of his race. Although the evidence showed that Mr. Mack met the objective qualifications of the job,[9] his performance did not fulfill its normal requirements. The Defendants have asserted Mr. Mack's poor job performance as the non-discriminatory reason for his discharge. They have supported this assertion with affidavits and the contemporaneous personnel notes of Mr. Mack's supervisors.

According to the evidence presented by the Defendants, during the two years Mr. Mack worked for the company, his supervisors counselled him at least sixteen times on his poor job performance. He was not fired, though, until he had been given numerous chances to improve. The conferences between Mr. Mack and his supervi-

---

7. 42 U.S.C. § 2000e–3(a) (1976) makes it unlawful for an employer to discharge an employee "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."

8. These criteria for a *prima facie* case are not immutable. The courts must remain flexible in

determining whether a *prima facie* case of discrimination has been made out. *McCuen v. Home Insurance Co.,* 633 F.2d 1150, 1151 (5th Cir.1981) (Unit B); *Ramirez v. Sloss,* 615 F.2d 163, 167–69 & n. 9 (5th Cir.1980).

9. Mr. Mack has a bachelor of science degree. The other lab technicians had high school degrees.

sors are evidenced by handwritten notes his supervisors kept. These notes offer the following account of Mr. Mack's employment with the company.

As early as December 1976, Technical Supervisor LaPierre discussed with Mr. Mack his "general reliability, sickness, tardiness, and excused time." Mr. Mack's tardiness and unexcused absences, according to his supervisors' notes and their affidavits, nonetheless remained a problem until he was fired in April 1978.

On January 12, 1977, Mr. LaPierre counselled Mr. Mack about delinquent raw material tests. To remedy the delay, LaPierre, Second Shift Production Supervisor Hancock, and Plant Manager Anapolle agreed to let Mr. Mack set testing priorities on his own shift. The record does not show that Mr. Mack improved. During his employment, he was consistently behind schedule.

On May 12, 1977, Mr. LaPierre found it necessary to warn Mr. Mack about "falling 'asleep' during break periods." When Mr. LaPierre checked with Mr. Hancock, he discovered that Mr. Mack slept during his working hours "many times." Mr. Hancock's affidavit to the Court reports that he found Mr. Mack asleep several times during his shift, that Mr. Mack took extended breaks, and that he repeatedly left work early.

On May 25, 1977, a year before Mr. Mack was fired, Mr. LaPierre "put him on notice as to his future with [the division]." Mr. Mack was told that "[t]he next 2 months will be a test of how well he measures up to the standard. The specific area which needs attention is attitude. This area breaks down into: attendance, punctuality, initiative, and attentiveness to the job.... Specific examples of poor performance were cited in each area."

The notes of his supervisors indicate that Mr. Mack was receptive to their warnings. In November 1977, Mr. Kinsel noted that "Mack seemed to understand well and responded in a positive manner[,] ... [a]greed to step up his involvement in laboratory and production areas." Mr. Mack's promises, however, were not borne out. He continued to have attendance problems and difficulty in meeting schedules. He contended that he was overworked, but his supervisors maintained that others had performed the same job without any trouble.

In February 1978, Mr. Kinsel cautioned Mr. Mack about charging excessive overtime, improperly preparing a distillate, and either failing to test batches or performing inaccurate tests. Mr. Kinsel informed Mr. Mack that he was setting up a program to determine Mr. Mack's proficiency in running tests, to cure deficiencies, and to determine the quality and quantity of Mr. Mack's output. Two weeks before, Mr. Kinsel had set up a system for Mr. Mack to inform his supervisors when he was sick or when he was leaving the plant. Mr. Kinsel remarked in February that "Mack's performance over the next several months will determine whether or not he stays with [the division]." The next day Mr. Kinsel confronted Mr. Mack with test results Mr. Mack had reported for which no evidence existed that the tests had been run. Mr. Kinsel "left Mack with 3 options: 1) do a complete turnaround with regards to the quality and quantity of his work and with respect to his job attitude; 2) leave [the division]; 3) be fired by us if we find one more case of such gross negligence on his part." The following day Plant Manager Anapolle reiterated these points to Mr. Mack.

Even then, however, Mr. Mack was "still unclear about why [they] considered that he was doing a poor job—he thinks he is doing an excellent job." Mr. Kinsel explained again the supervisors' concerns, and warned that if Mr. Mack did not perform as they expected, he would be fired. The next month Mr. Mack approved the shipment of an out-of-specification product, and a week later a customer complained about another out-of-specification product allegedly tested by Mr. Mack, for which no evidence of testing was available. Once portions of the same shipment were retested, Mr. Mack's test results proved inaccurate. In mid-April 1978, when Mr. Kinsel

entered the laboratory to inform Mr. Mack of his discharge, he found Mr. Mack doing calisthenics, dressed in exercise shorts. Mr. Mack's supervisors have stated in their affidavits to the Court that his job performance would not have been tolerated from any employee, regardless of race, and that no white employee with a similar employment record has been retained by the company.

The evidence offered by the Defendants establishes strong, legitimate nondiscriminatory reasons for Mr. Mack's discharge. Even had Mr. Mack succeeded in making a *prima facie* case of discrimination, the Defendants' evidence would have sufficed to rebut that case. Mr. Mack disputes the Defendants' characterization of his work performance. He maintained during his employment that his job performance was excellent, that he did more work than the three other lab technicians, that he was wrongly accused of errors, and that any lab errors were the fault of the first-shift lab technicians. In his post-termination deposition, he asserted that the division's production crew would attest that he had been "set up" or "framed" so that he would appear to be performing unsatisfactorily. He has offered no evidence, however, that he was "framed" and no evidence to counter the Defendants' convincing showing that his job performance was

unsatisfactory. He has likewise failed to show that the Defendants' explanation for his discharge was a pretext for discrimination. The Court therefore discounts Mr. Mack's conclusory allegations and finds that Mr. Mack was discharged for poor job performance. The Court is satisfied that race played no part in the decision to fire Mr. Mack and, accordingly, grants the Defendants summary judgment on Mr. Mack's claim of discriminatory discharge.

## V. THE § 1981 CLAIMS [10]

The Defendants contend that Mr. Mack's claims under 42 U.S.C. § 1981 are time-barred.[11] They assert that, because Mr. Mack asks only for monetary relief, the applicable limitations period is the two-year period specified in the Official Code of Georgia Annotated § 9-3-22 (1982) for recovery of wages. Because Mr. Mack's cause of action accrued in April 1978 when he was discharged, they continue, his claims were barred by the time he filed his complaint in February 1982. The Court agrees that Mr. Mack is barred from seeking back pay pursuant to § 1981 because the two-year limitations period for recovery of wages specified in § 9-3-22 has passed. *Whatley v. Department of Education,* 673 F.2d 873, 877 (5th Cir.1982) (construing former provision Georgia Code

---

10. 42 U.S.C. § 1981 (1976) provides in pertinent part:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens....

11. The Defendants have advanced the same argument with respect to Mr. Mack's §§ 1983, 1985(3), and 1986 claims. As a matter of convenience, the Court disposes of it here. The applicable limitations period for Mr. Mack's § 1986 claims is prescribed by the statute and will be considered below. The controlling limitations period for his §§ 1981, 1983, and 1985(3) claims is the most appropriate under state law. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975). As discussed above, this circuit has determined that the two-year limitations period for recovery of wages specified in O.C.G.A.

§ 9-3-22 applies to employment discrimination claims for back pay, and the twenty-year limitations period to enforce individual statutory rights specified in the same statute applies to employment discrimination claims for equitable relief. *Whatley v. Department of Education,* 673 F.2d 873, 877-78 (5th Cir.1982) (limitations period of §§ 1981 and 1983 claims). To determine the appropriate limitations period for Mr. Mack's § 1985(3) claim, the Court must identify the essential nature of his claim. *Id.* at 878. The conspiracy of which Mr. Mack complains is one to deprive him of his statutory employment rights. *Whatley* indicates that such employment discrimination claims are governed by the limitations period of § 9-3-22. *Id.* Treating Mr. Mack's § 1985(3) claim as subject to the same limitations period as his Title VII, § 1981, and § 1983 claims also makes sense because the allegations of discrimination underlying all the claims are the same. *Id.*

Annotated § 3–704). Mr. Mack's complaint, in its jurisdictional statement, also requests, however, unspecified injunctive and declaratory relief. This request is sufficient to invoke the twenty-year limitations period specified in § 9–3–22 for equitable relief to enforce an individual's statutory rights. *Id.* Thus, while the Court can not order backpay for any § 1981 violations, it can take cognizance of Mr. Mack's § 1981 claims and can afford him other relief.

▮▮▮▮ Because Title VII and § 1981 employment discrimination claims are governed by the same evidentiary burdens, *Lewis v. Central Piedmont Community College*, 689 F.2d 1207, 1209 n. 3 (4th Cir. 1982), *cert. denied,* — U.S. —, 103 S.Ct. 1433, 75 L.Ed.2d 792 (1983), *and cases cited therein,* the Court's previous analysis of Mr. Mack's retaliatory discharge and discriminatory discharge claims suffices here. His allegations of retaliatory discharge and discriminatory discharge, considered as § 1981 claims, necessarily fail on a record that is barren of a suggestion of racial discrimination. *Accord Hosemann,* 554 F.Supp. at 667 n. 15. The Defendants are entitled to summary judgment on these issues. The Defendants assert that neither has Mr. Mack made out a *prima facie* showing of discrimination with regard to salaries, promotions, and training opportunities. The Court agrees that Mr. Mack has failed to prove these claims and, consequently, that he is not entitled to summary judgment in his favor. By the same token, the Defendants have not made a convincing showing that Mr. Mack's claims lack merit. They have offered no evidence of the salaries of Mr. Mack and the other lab technicians, no evidence of the training and promotions that the other lab technicians may

have received, and no evidence of the method of determining salary, promotions, and training opportunities. They have been careful to point out the deficiencies in Mr. Mack's pleadings without, however, asserting that his claims lack any basis in fact. They have thus failed to dispel the force of the complaint allegations by showing that there is no genuine dispute as to material facts. The Court, accordingly, denies the Defendants' motion for summary judgment as to Mr. Mack's § 1981 claims that he was discriminated against with regard to salary, promotion, and training opportunities.

## VI. THE § 1983 CLAIMS [12]

▮▮▮ The Defendants maintain that the Court should grant summary judgment in their favor on Mr. Mack's § 1983 claims because Mr. Mack has not even alleged facts that would support those claims. The Court agrees that Mr. Mack has not alleged, nor adduced evidence tending to prove, a necessary element of a § 1983 claim—that he was deprived of his statutory rights "under color of" state law. The previous discussion of Mr. Mack's Title VII and § 1981 claims shows that Mr. Mack has failed to demonstrate that he was deprived of the employment rights guaranteed by Title VII. Furthermore, nothing in the record suggests that W.R. Grace Company or the individual Defendants acted under governmental authority. For these reasons, the Court dismisses Mr. Mack's § 1983 claim for failure to state a claim on which relief can be granted.

## VII. THE § 1985(3) CLAIMS [13]

▮▮▮ The gist of Mr. Mack's § 1985(3) claims is that his supervisors and

---

**12.** 42 U.S.C. § 1983 (1976) reads in relevant part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an ac-

tion at law, suit in equity, or other proper proceeding for redress.

**13.** 42 U.S.C. § 1985(3) provides in relevant part:
If two or more persons in any State or Territory conspire ... *for the purpose of depriving,* either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ...; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done,

others he can not identify conspired, with the intent of discriminating against him, to make his work appear unsatisfactory. His complaint does not specify whether the object of this conspiracy was to discriminate against him with respect to salary, training, and promotion opportunities or to effectuate his discharge. To prevail on this claim, Mr. Mack must allege and prove that the Defendants conspired to deprive him of his statutory employment rights and that, in furtherance of their purpose, one or more of them performed acts that resulted in the deprivation. *See Griffin v. Breckenridge*, 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798–1799, 29 L.Ed.2d 338 (1971); *McLellan v. Mississippi Power & Light Company*, 545 F.2d 919, 923 (5th Cir.1977) (en banc). He has provided no evidence, though, of a conspiracy founded on a discriminatory motive that subsisted among the Defendants and no evidence that the Defendants deprived him of his statutory employment rights. On the basis of the Defendants' evidence, the Court has already found that Mr. Mack was discharged for non-discriminatory reasons. This finding vitiates any § 1985(3) claim that the Defendants effected his discharge by an unlawful conspiracy. Summary judgment for the Defendants on this issue is, therefore, appropriate. Insofar as Mr. Mack's complaint may be read to suggest an unlawful conspiracy to deprive him of salary, promotion, and training opportunities, summary judgment on that claim is inappropriate because neither side has adduced sufficient evidence on that claim and issues of material fact remain unresolved.

## VIII. THE § 1986 CLAIMS [14]

The Defendants assert that Mr. Mack's § 1986 claims are time-barred and that Mr. Mack has not alleged facts which would support such claims. The Court need not determine whether Mr. Mack has alleged facts that could give rise to a cause of action under § 1986 because, even had he done so, such an action would now be time-barred. The statute specifies that an action must be brought within one year after the cause of action accrues. The latest date on which Mr. Mack's cause of action could have accrued is the date of his discharge. This action was not brought until almost four years later, and his § 1986 claims are therefore barred by the one-year limitation period.

## XI. CONCLUSION

The Defendants have established by convincing evidence nondiscriminatory reasons for Mr. Mack's discharge. Mr. Mack has not countered their showing with evidence tending to prove that it is untrue or that it is a pretext for discrimination. His unsubstantiated allegations of discrimination are insufficient to withstand summary judgment against him because he has not shown by receivable evidence that there are genuine issues of material fact remaining for trial. Because Mr. Mack has not made out a *prima facie* case of discrimination with respect to his discharge, the Court GRANTS summary judgment for the Defendants and DENIES summary judgment for Mr. Mack on his Title VII, § 1981 and § 1985(3) claims of discriminatory discharge, retaliatory discharge, and unlawful

---

any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

**14.** 42 U.S.C. § 1986 (1976) provides in pertinent part:

Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case.... But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.

conspiracy to effect his discharge. The Court GRANTS summary judgment for the Defendants · and DENIES summary judgment for Mr. Mack on his § 1983 claim because, absent an allegation that the Defendants acted under governmental authority, Mr. Mack has failed to state a claim on which relief can be granted. The Court GRANTS summary judgment for the Defendants and DENIES summary judgment for Mr. Mack on his § 1986 claim because suit on that claim is barred by the limitations period set forth in the statute. The Court DENIES summary judgment to both Mr. Mack and the Defendants on Mr. Mack's § 1981 claims of discrimination in salary, promotion, and training opportunities and Mr. Mack's § 1985(3) claim of conspiracy to effect that discrimination because neither Mr. Mack nor the Defendants has demonstrated that there are no genuine issues of material fact for trial. The Court DISMISSES Mr. Mack's claims except for his § 1981 and § 1985(3) claims relating to discrimination and unlawful conspiracy to discriminate in salary, training, and promotion opportunities.

## X. THE MOTION TO COMPEL DISCOVERY AND FOR AN AWARD OF EXPENSES AND FEES

At a conference between Mr. Mack and the Defendants' counsel, held pursuant to Local Rule 91.62,[15] the Defendants' counsel complained that Mr. Mack's responses to interrogatories 3, 4, 5, 7, 8, 9, 10, 11, and 12 and to paragraph 6 of the request for documents were deficient. Mr. Mack promised to consider the Defendants' complaints, but he has not provided them with supplemental responses. Because the Court grants summary judgment for the Defendants on most of Mr. Mack's claims and dismisses those claims, the Court finds it unnecessary for Mr. Mack to file supplemental responses that relate to the dismissed claims. Accordingly, Mr. Mack is not required to supplement his responses to interrogatories 4(b), 4(c), 4(d), and 9. More specific responses to the remaining interrogatories and to the request for documents, though, would materially advance the litigation by clarifying Mr. Mack's contentions and apprising the Defendants of what they must seek to disprove. *See* 8 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2167 & nn. 21–22 (1970). The Court finds that the information and documents sought from Mr. Mack are not privileged. Accordingly, the Court ORDERS Mr. Mack to supplement his responses to interrogatories 3, 4(a), 5, 7, 8, 10, 11, and 12 and paragraph 6 of the request for documents. The Court further ORDERS that the Defendants file within fifteen days of entry of this Order an affidavit of expenses and attorneys' fees they incurred in obtaining this Order. Mr. Mack shall have thirty days from entry of this Order to file a response. His response may address the issue whether an award of expenses and attorneys' fees to the Defendant is appropriate, as well as commenting directly on the Defendants' affidavit. The Clerk shall resubmit the motion for an award of expenses and fees forty days from entry of this Order.

---

**15.** Local Rule 91.6 deals with motions to compel discovery. Local Rule 91.62 obligates the moving party to confer with the opposing party before filing a motion in an effort to resolve by agreement any objections to discovery.