**G.W. CABINESS, Plaintiff,**

v.

**YKK (USA), INC., Defendant.**

**Civ. A. No. 93–105–1–MAC (WDO).**

United States District Court,
M.D. Georgia,
Macon Division.

July 26, 1994.

Gawanna Michelle Cabiness, pro se.

Devin M. Ehrlich, Atlanta, GA, Richard R.
Parker, Nashville, TN, for defendant.

### ORDER

OWENS, Chief Judge.

Defendant YKK (USA), Inc. ("YKK") has moved for summary judgment on all claims. The court has considered the facts, summarized below, in the light most favorable to the plaintiff. After careful consideration of the arguments of counsel, the evidence presented, and the relevant statutory and case law, the court issues the following order.

### I. FACTS

Gawanna Cabiness began working at the YKK plant in Macon, Georgia, in May 26, 1987, when she was hired as a machine operator in the assembly department. In August 1988, she was awarded the position of sewing operator in the sewing department. The YKK plant is in continuous operation and plaintiff worked at all relevant times on the third shift. From April 1991 until her termination, David Williams served as Ms. Cabiness' immediate supervisor.

YKK has a written progressive disciplinary policy which is supplied to all employees, including the plaintiff, in the employee handbook. (Defendant's Exhibit 7; Cabiness deposition, p. 47.) A YKK supervisor can issue either a documented "verbal warning" or, for more serious infractions, a "reprimand." Reprimands are designated as Class One, a minor infraction; Class Two, a more serious reprimand; or Class Three, which is the most severe sanction and is cause for immediate termination. A Class One violation stays active for 12 months, while a Class Two violation remains active for 18 months. An employee who receives four Class One reprimands in a 12-month period is subject to

termination. Disciplinary actions can be appealed by the employee at several levels; however, Cabiness appealed only the last disciplinary action taken against her on February 13, 1992. (Cabiness deposition, pp. 118–19.)

The events leading up to the termination began as plaintiff started her shift on February 13, 1992. At approximately 11:45 p.m., David Williams, plaintiff's supervisor, approached the plaintiff to emphasize the importance of staying in her work area to ensure that her line kept running and to make quality checks. (Cabiness deposition, pp. 63–66; Williams deposition, pp. 61–62.) Williams brought these matters to plaintiff's attention because she had been responsible for a certain amount of defective product on the previous day. (Williams deposition, pp. 64–65.) At approximately 2:03 a.m., Williams was putting out thread to the sewing lines when he noticed that the down lights were on, indicating that plaintiff was away from her work station. (Williams deposition, p. 56.) Williams later saw the plaintiff walk back to her station and pick up her tool belt at 2:23 a.m. (Id. pp. 56–57.) Williams requested that Ms. Cabiness come to the office where he issued her a Class One reprimand for being away from her work station over ten minutes.[1] (Defendant's Exhibit 10; Cabiness deposition, p. 69; Williams deposition, p. 57.) Plaintiff maintains that she did not leave her line until 2:10 a.m., although she is uncertain what time she returned to her station. (Cabiness deposition, p. 72.)

The Class One violation which plaintiff received on February 13, 1992, was her fourth in a 12-month period and, thus, pursuant to YKK policy, resulted in her termination.[2]

---

[1] Williams reprimanded plaintiff for leaving her work station for over 20 minutes. Breaks are limited to ten minutes, hence any break which exceeds ten minutes in length would justify the reprimand. The YKK employee manual designates scheduled break times and limits them to ten minutes. It is undisputed that Ms. Cabiness was on an unscheduled break when cited for the violation. In her statement of disputed facts, plaintiff asserts that the employee manual does not specifically state that unscheduled breaks can not exceed ten minutes. The argument that the unscheduled breaks are somehow unlimited while the scheduled breaks are set at ten minutes stretches credibility.

[2] The following is a summary of plaintiff's disciplinary record with YKK as evidenced from defendant's exhibits.

| DATE | WARNING |
|------|---------|
| 2–13–92 | fired because she was given fourth Class I violation in 12 months—she left station more than 20 minutes |
| 1–23–92 | verbal warning—tardy 3 times in 30–day period |
| 12–12–91 | Class I violation—loss of material |
| 11–1–91 | verbal warning |
| 6–17–91 | Class I violation—loss of material |

Cabiness' disciplinary record shows that she received four Class I reprimands between May 1991 and February 1992.

Cabiness unsuccessfully appealed the February 1992 reprimand and subsequent dismissal to the YKK Board of Review. After conducting an investigation, the Board of Review concluded that Ms. Cabiness did not dispute being away from her line for over 10 minutes and that the reprimand was appropriately given. (Defendant's Exhibits 11 & 12; Cabiness deposition, pp. 70–72; Joyner deposition, pp. 34–36, 39.) Plaintiff filed a charge of discrimination with the EEOC on March 31, 1992, where she alleged that others had spent a similar amount of time in the rest room and not been penalized. (Defendant's Exhibit 3.) Specifically, plaintiff alleges that two white employees from her department were in the bathroom for approximately the same time as she but they were not disciplined. (Cabiness affidavit, ¶ 34.) The charge does not refer to any other occasions of discrimination. The EEOC issued its right to sue letter on December 21, 1992.

In her complaint, plaintiff alleges that YKK and supervisor David Williams in particular disciplined white employees less often and more leniently than black employees. Specifically, she charges that she and other black workers were written up for violations while white workers were issued less serious verbal warnings for similar conduct. Defendant asserts that Ms. Cabiness was terminated according to company policy which was fairly applied without regard to race. YKK denies discriminatory treatment in discipline.

## II. SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) authorizes summary judgment when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The applicable substantive law identifies which facts are material in the case. *Anderson v.* *Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

"The movant bears the initial burden to show, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991). *See also Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In assessing whether the movant has met this burden, the court must view the evidence and draw all factual inferences in the light most favorable to the party opposing the motion. *See Bradbury v. Wainwright,* 718 F.2d 1538, 1543 (11th Cir.1983). When the non-moving party has the burden of proof at trial, the moving party may carry its burden at summary judgment either by presenting evidence negating an essential element of the non-moving party's claim or by pointing to specific portions of the record which demonstrate that the non-moving party cannot meet its burden of proof at trial; merely stating that the non-moving party cannot meet its burden of proof at trial is not sufficient. *See Clark,* 929 F.2d at 606–608 (explaining *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) and *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Once the moving party has adequately supported its motion, the nonmovant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute that precludes the entry of summary judgment. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); *Clark,* 929 F.2d at 608. A mere scintilla of evidence is insufficient to overcome summary judgment; a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. The court notes that "[i]n general, summary judgment is an inappropriate tool for resolving claims of employment discrimination,

| DATE | WARNING |
|------|---------|
| 5–21–91 | verbal warning—tardy 3 times in 30–day period |
| 5–6–91 | Class I violation—tardy because of talking with another worker |
| 6–26–90 | Class I violation |

| DATE | WARNING |
|------|---------|
| 3–14–90 | Class I violation |
| 1–10–90 | verbal warning |
| 9–12–89 | verbal warning |
| 3–7–89 | verbal warning |
| 10–6–88 | verbal warning |

which involve nebulous questions of motivation and intent." *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir.1987), *quoting Thornbrough v. Columbus and Greenville R.R.*, 760 F.2d 633, 640 (5th Cir. 1985); *Beard v. Annis*, 730 F.2d 741, 743 (11th Cir.1984).

## III. DISCUSSION

### A. TITLE VII CLAIM

#### 1. Timeliness of EEOC Charge

Before addressing plaintiff's substantive claims, the court must first consider whether the Title VII claims are timely. Defendant argues that plaintiff can only bring suit for adverse employment actions which occurred within 180 days of the filing of her EEOC charge on March 31, 1992. *United Air Lines v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977). Further, defendant urges that the earlier Class One reprimands are not related to the February 13, 1992, reprimand such that they constitute a "continuing violation."[3] *See Roberts v. Gadsden Memorial Hosp.*, 835 F.2d 793 (11th Cir.1988).

In *Beavers v. American Cast Iron Pipe Co.*, 975 F.2d 792 (11th Cir.1992), the Eleventh Circuit Court of Appeals held that "[w]here an employee charges an employer with continuously maintaining any illegal employment practice, he may file a valid charge of discrimination based upon that illegal practice until 180 days after the last occurrence of an instance of that practice." *Id.* at 796 (*quoting Gonzalez v. Firestone Tire & Rubber Co.*, 610 F.2d 241, 249 (5th Cir.1980)). In contrast, "where the employer engaged in a discrete act of discrimination more than 180 days prior to the filing of a charge with the EEOC by the employee, allegations that the discriminatory act continues to adversely affect the employee or that the employer presently refuses to rectify its past violation," the charge must be filed within 180 days of the discrete act. *Id.*

The Fifth Circuit has established guidelines for determining whether a violation should be viewed as continuing.[4] *See Berry v. Board of Supervisors of L.S.U.*, 715 F.2d 971, 981 (5th Cir.1983). Courts should consider (1) subject matter, whether the acts involve similar types of discrimination; (2) frequency, whether the acts are isolated incidents; (3) degree of permanence, is the act permanent such that it should trigger the employee's awareness of and duty to assert her rights. *Berry*, 715 F.2d at 981.

Plaintiff alleges that YKK continuously discriminated against black employees when enforcing disciplinary rules, so that the last reprimand was part of a continuing policy of discrimination. Furthermore, a Class I reprimand remains active in the employees file for 12 months; thus, its effect continues for that time. Were it not for the three prior Class I violations within a 12 month period, plaintiff would not have been terminated. Hence, there is a substantial nexus between the time-barred acts and the timely-asserted acts. The court concludes that plaintiff has alleged a continuing violation. Nevertheless, plaintiff did not present the earlier claims to the EEOC for investigation and conciliation. Hence, plaintiff's failure to challenge all but the last reprimand in an EEOC charge precludes her from raising the other claims under Title VII.

#### 2. Scope of the EEOC Charge

Defendant also points out that plaintiff's complaint exceeds the scope of her EEOC charge. The charge alleged discriminatory termination. (*See* Defendant's Exhibit 3.) In addition to challenging the termination, plaintiff's complaint charges retaliation, disparate treatment in working conditions, hostile environment, and discriminatory terms and conditions of employment.[5] A Title VII plaintiff can only litigate claims which are related or could reasonably be expected to grow out of the EEOC charge. *Sanchez v. Standard Brands Inc.*, 431 F.2d

---

3. It is undisputed that the February 13, 1992, reprimand and discharge fell within the 180–day period as well as an earlier Class I reprimand issued on December 12, 1991.

4. The court suggested that the three factors are relevant but not exhaustive.

5. The complaint was drafted *pro se* and was never amended once plaintiff obtained council.

455, 466 (5th Cir.1970). The rationale for this limitation is that Congress wanted the EEOC to have an opportunity to investigate and attempt conciliation of all claims before litigation was brought. *See Selman v. Kendall/Hunt Publishing Co.*, 20 FEP Cases 1712, 1713 (N.D.Ga.1979) (core of Title VII is private settlement and elimination of unfair practices without litigation). Thus, raising a particular claim at the administrative level is a condition precedent to filing suit on the claim. *See Babrocky v. Jewel Food Company*, 773 F.2d 857, 864 (7th Cir.1985).

■ In this instance, some of the allegations asserted in the complaint are not reasonably related to the EEOC charge of discriminatory termination. The claim of retaliation is completely misplaced because there is no evidence that plaintiff engaged in protected activity prior to any adverse actions. The claims of retaliation, hostile environment, and discriminatory terms and conditions of employment [6] are not reasonably related to plaintiff's EEOC charge of wrongful termination. *See Mack v. W.R. Grace Co.*, 578 F.Supp. 626, 632 (N.D.Ga.1983) (discrimination with regard to salary, promotions, and training is not so reasonably related to plaintiff's termination claim as to fall within EEOC investigation or subsequent Title VII litigation.); *Clements v. H. Goodman & Sons*, 25 Fair Empl.Prac.Cas. (BNA) 511, 1981 WL 161 (N.D.Ga.1981) (where EEOC charge alleged racially discriminatory termination, plaintiff could not include claims of verbal and physical harassment and discriminatory denials of assistance, promotion, and transfer). Accordingly, plaintiff can not assert her claims of retaliation, hostile environment, and discriminatory terms and conditions of employment under Title VII although they may be viable under 42 U.S.C. § 1981.

### 3. Substantive Claims

■ The claim of racially discriminatory discharge under Title VII remains before the court and must be analyzed using the standards set forth in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36

L.Ed.2d 668 (1973). In a Title VII disparate treatment action, the ultimate question is whether the defendant intentionally discriminated against the plaintiff. *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983). Intentional discrimination is an issue of fact. *Pullman–Standard v. Swint*, 456 U.S. 273, 287–88, 102 S.Ct. 1781, 1789–90, 72 L.Ed.2d 66 (1982).

■ Because direct evidence of discrimination is difficult to produce, the courts use a three-part procedure to analyze circumstantial evidence of discrimination. *McDonnell Douglas*, 411 U.S. 792, 93 S.Ct. 1817. First, the plaintiff must present a prima facie case of discrimination. To establish a prima facie case of discrimination in the application of work rules, plaintiff must prove that: (1) she was a member of a protected group; (2) she was qualified for the job from which she was fired; and (3) that the misconduct for which she was discharged is nearly identical to that engaged in by an employee not within the protected group who was not disciplined similarly. *Jones v. Gerwens*, 874 F.2d 1534 (11th Cir.1989) (plaintiff, in addition to showing that she is a member of a protected class, must show either (a) that she did not violate the work rule, or (b) that she engaged in misconduct similar to that of a person outside the protected class, and that the disciplinary measures enforced against her were more severe than those imposed upon other employees who engaged in similar misconduct.); *Nix v. WLCY Radio/Rahall Communications* 738 F.2d 1181, 1185 (11th Cir.1984); *quoting Davin v. Delta Air Lines, Inc.*, 678 F.2d 567, 570 (5th Cir. Unit B 1982). A presumption of discrimination arises if this burden is met. The main contention is over the third prong of the plaintiff's prima facie case.

■ Plaintiff alleges in her complaint and response to defendant's motion that David Williams reprimanded her while not reprimanding white employees for similar conduct. In cases of discriminatory application of work rules, plaintiff must show that

---

**6.** The complaint avers disparate treatment in working conditions and discriminatory terms and conditions of employment. The court can

appreciate no difference between the two claims and will refer to both claims as discriminatory terms and conditions of employment.

employees are treated differently for "nearly identical" conduct. *Nix,* 738 F.2d at 1186. First, plaintiff has presented no evidence that YKK retained any employee who obtained four Class I reprimands. Instead, plaintiff concentrates on showing that white employees were disciplined more laxly than black employees in general. She alleges in her deposition and affidavit that fellow employees Janice Adkins and Toni Melton were also in the bathroom on February 12, 1992, for approximately the same time as she, however, they were not reprimanded in any manner. (Cabiness deposition, pp. 73–79; Cabiness affidavit, ¶ 34.) In a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmovant. While the evidence is not strong, plaintiff has presented evidence in the form of testimony that her superior treated her differently than her white coworkers. Therefore, plaintiff has established a prima facie case of discrimination in application of work rules.

Having presented evidence of a prima facie case, defendant YKK then must articulate a legitimate, nondiscriminatory reason for discharging the plaintiff. The defendant does not have to persuade the court that "it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254–55, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207, 216 (1981). The Eleventh Circuit has described the defendant's burden as "exceedingly light." *Perryman v. Johnson Products Co.,* 698 F.2d 1138, 1142 (11th Cir.1983). In the instant case, YKK maintains that it fired plaintiff because she accumulated four Class One violations in a 12–month period. The employer further offers evidence that it uniformly enforces its disciplinary policies against employees of all races. In response to plaintiff's allegations, YKK presents evidence that a number of black employees in the sewing department where plaintiff worked have received no reprimands whatsoever. YKK has presented evidence explaining why Ms. Cabiness was terminated. However, a question of material fact remains concerning whether the supervisor treated white coworkers more favorably. While plaintiff's evidence of differential treatment is not strong, her allegations are sufficiently specific to survive summary judgment. Defendant's denial and plaintiff's allegations create a question of fact as to whether Adkins and Melton took excessive unscheduled breaks and whether defendant intentionally disciplined them less severely than plaintiff. This question of fact precludes summary judgment.

## B. SECTION 1981 CLAIM

As previously stated in this order, plaintiff's claims for retaliation, hostile environment, and discriminatory terms and conditions of employment under Title VII were dismissed because they are not reasonably related to plaintiff's EEOC charge. However, plaintiff has plead 42 U.S.C. § 1981 as an alternative basis for recovery of these claims.

The Civil Rights Act of 1991 ("the 1991 Act") became effective November 21, 1991, and expanded the reach of § 1981. Section 1981 protections now apply to the entire employment context and not simply terminations. The term "make and enforce contracts" includes the terms and conditions of the contractual relationship. 42 U.S.C. § 1981(b) (Supp.1994). Plaintiff can use § 1981 as an alternative method of recovery for her discriminatory termination claim. Moreover, plaintiff can proceed on other allegations which may not have been administratively exhausted to the extent that they fall within the two-year statute of limitations.[7]

The same substantive analysis applies to § 1981 claims as under Title VII. Plaintiff's claims of retaliation, hostile environment, and different terms and conditions remain nothing more than allegations. She

---

7. The statute of limitations for § 1981 claims is borrowed from the state statute of limitations on personal injury actions. *Goodman v. Lukens Steel Co.,* 482 U.S. 656, 660–61, 107 S.Ct. 2617, 2620–21, 96 L.Ed.2d 572 (1987). Georgia has a two-year limitation on personal injury suits. O.C.G.A. § 9–3–33 (1982). *Evans v. Meadow Steel Products, Inc.,* 572 F.Supp. 250, 253 (N.D.Ga.1983).

has presented no evidence or argument in support of these claims. The allegations of different terms and conditions of employment, other than the February 1992 incident, are too conclusory to survive summary judgment. *Forsberg v. Pacific Northwest Bell Tele. Co.*, 840 F.2d 1409, 1419 (9th Cir.1988). As discussed above, the termination claim involving discriminatory application of work rules has been sufficiently supported by specific allegations of differing treatment to survive summary judgment.

Accordingly, defendant's motion for summary judgment is **DENIED** as to plaintiff's

termination claim. Defendant's motion for summary judgment is **GRANTED** as to plaintiff's retaliation, hostile environment, and terms and conditions claims. Further the motion is **GRANTED** against plaintiff's § 1982 claim.[8]

**SO ORDERED.**

---

**8.** Plaintiff makes an unsupported assertion that she has a claim under § 1982 for her wrongful termination. Section 1982 provides that all United States citizens shall have the same rights as enjoyed by white citizens to "inherit, purchase, lease, sell, hold, and convey real and personal property." The statute does not apply to employment discrimination claims. *Evans v. Meadow Steel Products, Inc.*, 572 F.Supp. 250, 253 (N.D.Ga.1983) (citations omitted).