**Rudolph WARREN, Plaintiff,**

**v.**

**QUALITY CARE SERVICE
CORP., Defendant.**

**No. CIV–81–347T.**

United States District Court,
W.D. New York.

March 6, 1985.

As Amended March 11, 1985.

Emmelyn Logan-Baldwin, Rochester, N.Y., for plaintiff.

Goldberg & Goldberg, Rockville Centre, N.Y., Saperston, Day, Lustig, Gallick, Kirschner & Gaglione, P.C., Neil A. Goldberg, Buffalo, N.Y., for defendant.

## MEMORANDUM DECISION and ORDER

TELESCA, District Judge.

Plaintiff commenced this employment discrimination suit in May of 1981, alleging that his discharge was in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e *et seq.* By an Order of this Court on February 3, 1984, plaintiff was allowed to amend his complaint to include an additional cause of action for a violation of 42 U.S.C. Section 1981. Presently before the Court are cross-motions for summary judgment and attorney's fees, as well as several other motions by plaintiff. For the reasons set forth below, defendant's motion for summary judgment is granted, and all other motions by both parties are denied.

## BACKGROUND

The plaintiff was hired by defendant in July of 1979, to begin employment on August 13, 1979. He was fired slightly more than two months later, on October 26, 1979. According to plaintiff's own affidavit, both of those decisions were made by Mary Ellen DuCharme, the Area Manager for defendant.

Shortly after his termination, plaintiff filed a claim for unemployment benefits with the New York State Department of Labor. After his initial application was denied, he received a hearing before Administrative Law Judge Rosario DiLorenzo on the issue of whether his termination was the result of his own misconduct. After a full hearing, the ALJ found that plaintiff was discharged "as a result of his failure to comply with the employer's instructions relating to the payroll, falsely advising the employer that he had completed the payroll, and also for not being on a 24 hour availability basis." Plaintiff appealed that decision to the New York State Unemployment Insurance Appeals Board, and then to the New York State Appellate Division, which both affirmed the decision of the ALJ.

In an order issued by this Court on February 3, 1984, I held that plaintiff is collaterally estopped from challenging in this action any of the factual determinations made in the prior state proceeding as set forth in the decision of the Administrative Law Judge. For the purposes of this action, therefore, it has already been established that defendant had a legitimate, non-discriminatory reason for discharging plaintiff. Nevertheless, plaintiff's claims of racial discrimination could not be ruled out at that time, because Title VII forbids an employer from using even legitimate reasons to fire an employee as a pretext for discrimination. *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 804, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973). I therefore denied defendant's motion to dismiss the complaint, pending further discovery to determine whether plaintiff might be able to make such a showing.

Now that discovery is virtually completed in this case, defendant has renewed its motion for summary judgment, and plaintiff has cross-moved for summary judgment. The issue to be decided is whether plaintiff has been able to raise any genuine issue of racial discrimination, notwithstanding the established fact that defendant possessed a non-discriminatory reason for his discharge.

## DISCUSSION

### I.

■ Under the federal law governing plaintiff's two causes of action, plaintiff must prove that he was the victim of intentional discrimination.[1] Plaintiff has the initial burden of establishing a *prima facie* case, by proving with a preponderance of the evidence that he was discharged "under circumstances which give rise to an inference of unlawful discrimination". *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). Once plaintiff passes that threshold, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection". *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Of course, "the defendant need not persuade the Court that it was actually motivated by the proffered reasons", *Burdine, supra*, at 254, 101 S.Ct. at 1094, for the ultimate burden of proving intentional discrimination remains at all times with the plaintiff. *Cooper v. Federal Reserve Bank of Richmond*, — U.S. ——, 104 S.Ct. 2794, 2799, 81 L.Ed.2d 718 (1984).

■ Once a defendant has articulated a legitimate, nondiscriminatory reason for an employee's discharge (as defendant certainly has in this case), plaintiff has the burden of proving "that the presumptively valid reasons for his rejection were in fact a coverup for a racially discriminatory decision". *McDonnell Douglas, supra,* 411 U.S. at 805, 93 S.Ct. at 1825. Plaintiff must prove that defendant's explanation for the decision "was a pretext or discriminatory in its application". *Id.* at 807, 93 S.Ct. at 1826. In other words, "it is the plaintiff's task to demonstrate that similarly situated employees were not treated equally". *Burdine, supra,* 450 U.S. at 258, 101 S.Ct. at 1096.[2] As the Supreme Court observed in describing this burden, "[e]specially relevant to such a showing would be evidence that white employees involved in acts against [the employer] of comparable seriousness ... were nevertheless retained or rehired". *McDonnell Douglas, supra,* 411 U.S. at 804, 93 S.Ct. at 1825. The question now before me is whether plaintiff has produced any such evidence in the present case.[3]

### A.

The first justification offered by defendant for plaintiff's discharge was the fact

---

1. It is now settled that liability under Section 1981 requires proof of intentional discrimination. *General Building Contractors Association v. Pennsylvania*, 458 U.S. 375, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982).

   Under Title VII, discriminatory purpose need not be proved when one challenges "hiring and promotion practices disqualifying substantially disproportionate numbers of blacks". *Washington v. Davis*, 426 U.S. 229, 246–7, 96 S.Ct. 2040, 2050–1, 48 L.Ed.2d 597 (1976). But in Title VII cases (such as this one) where there is only one plaintiff and no allegations of a custom or practice neutral on its face, the distinction between discriminatory "purpose" and "impact" collapses, and plaintiff has "the ultimate burden of persuading the Court that [he] has been the victim of intentional discrimination". *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981).

2. Of course, with respect to defendant's motion for summary judgment, the burden is squarely upon defendant, as the moving party, to prove

that plaintiff has failed to raise any genuine issue of material fact with regard to the required elements of plaintiff's case. Federal Rules of Civil Procedure 56(c). Once the defendant has articulated a legitimate reason for plaintiff's discharge and moves for summary judgment, therefore, it becomes defendant's burden to prove that plaintiff has failed "to counter the employer's showing with an adequate offer of proof that the employer's reasons for discharge are in fact a pretext for discrimination". *Mack v. W.R. Grace Company,* 578 F.Supp. 626, 631 (N.D.Ga.1983).

3. Although *McDonnell Douglas* dealt with Title VII of the Civil Rights Act, the same standards governing the allocation of burdens of proof are applicable to a Section 1981 action. *Hudson v. I.B.M. Corporation,* 620 F.2d 351, 354 (2d Cir.), *cert. denied,* 449 U.S. 1066, 101 S.Ct. 794, 66 L.Ed.2d 611 (1980). Consequently, the foregoing standards are equally applicable to both of plaintiff's causes of action, and the remainder of this decision will deal with them together.

that plaintiff failed to obey his employer's instructions relating to the payroll and deliberately misrepresented that he had completed the payroll. Plaintiff does not dispute that such allegations, if true, would constitute a legitimate basis for his discharge. Nor has plaintiff produced any evidence that any white employees deliberately lied to defendant but were nevertheless retained.

▪ Rather, plaintiff seeks to attack defendant's proffered explanation indirectly, by arguing that he was guilty only of an honest mistake, not deliberate falsehood, and that the ALJ never found to the contrary. Plaintiff's affidavit offers the following line of reasoning (at para. 4):

> On this point, the Administrative Law Judge stated that I "... misadvised the employer when ... [I] indicated that the payroll was complete when large portions of such payroll were not then completed". In common usage, to misadvise is to incorrectly advise; to *misadvise* is not the same as to *advise falsely*. (emphasis added).

On the basis of this argument, plaintiff has repeatedly accused defendant of "mischaracterizing" the findings of the ALJ, as well as the earlier decision of this Court which adopted those findings.[4]

▪ On the contrary, it is clear that plaintiff is the party guilty of an egregious distortion of the ALJ's decision. The sentence in that decision quoted by plaintiff, in which the ALJ stated that Warren had "misadvised" his employer, was immediately preceded by the finding of the ALJ that plaintiff was discharged, *inter alia*, "as a result of his ... *falsely advising* the employer that he had completed the payroll". (emphasis added). Moreover, to avoid any possible ambiguity about that finding, the ALJ went on to explicitly reject as "incredible" the plaintiff's contention that he "forgot" one portion of the payroll at the time that he informed his employer that he had completed the entire assignment. It is obvious, therefore, that the ALJ found plaintiff guilty of knowing and deliberate falsehood toward his employer, and plaintiff is precluded from relitigating that finding in this action.[5]

▪ For this reason, there is no merit to plaintiff's argument that he was unfairly fired for "misadvising" his employer when white employees guilty of comparable or worse errors were allowed to resign under more favorable circumstances. Even if I accept plaintiff's allegation that incompetent white employees were allowed to resign,[6] there is a vast qualitative difference

---

**4.** Indeed, plaintiff has gone so far as to file a cross-motion for an order by this Court "precluding the defendant from stating or inferring that any issue in this case has already been decided, including, the issue of credibility of the plaintiff". (Plaintiff's Notice of Cross-Motion, at 1–2). That motion must be denied, and not merely because defendant's statements about the ALJ's findings are completely accurate. Quite apart from the extremely dubious constitutionality of the order requested by plaintiff, cf. *Nebraska Press Association v. Stuart*, 427 U.S. 539, 559, 96 S.Ct. 2791, 2830, 49 L.Ed.2d 683 (1976) ("[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights"), it is highly questionable whether the equitable powers of this Court could extend so far as to preclude the defendant from "inferring" whatever it pleases about this or any other subject. "The remedial powers of an equity court must be adequate to the task, but they are not unlimited." *Whitcomb v. Chavis*, 403 U.S. 124, 161, 91 S.Ct. 1858, 1878, 29 L.Ed.2d 363 (1971).

**5.** Plaintiff now attempts to argue that he inadvertently "overlooked" part of the office payroll, and was guilty merely of "forgetting" that assignment when he told his employer that the job had been completed (Plaintiff's affidavit, paras. 5, 13), even though those contentions were already considered and explicitly rejected by the Administrative Law Judge ruling on his unemployment claim.

**6.** Plaintiff has been inconsistent in his accounts of the circumstances surrounding his termination. On January 7, 1980, while testifying under oath before an Administrative Law Judge of the New York State Department of Labor, plaintiff stated that Mrs. DuCharme had told him "you're going to have to quit or I'm going to have to terminate you," and that she fired him only after he chose not to resign. (See Exhibit "X" of defendant's notice of motion.) Yet in plaintiff's brief filed in connection with these motions on September 17, 1984, his attorney

between ordinary incompetence and deliberate dishonesty, and federal civil rights law does not preclude an employer from taking note of that difference. Cf. *Otis v. Inland Container Corp.*, 25 F.E.P. Cases 1280 (N.D.Ill.1981) (plaintiff's act of striking his supervisor qualitatively different from the act of fighting with a fellow employee). In light of that difference, plaintiff's allegations, even if true, do not "demonstrate that similarly situated employees were not treated equally", *Burdine, supra*, 450 U.S. at 258, 101 S.Ct. at 1096, because he has not identified any white employees who were treated differently after committing a comparable act of dishonesty toward their supervisors.

### B.

The second reason offered by defendant for plaintiff's discharge was his failure to be available for emergency calls when required by the terms of his employment. Shortly before his discharge, plaintiff had been placed by his employer on a 24 hour availability basis for a one week period for the purpose of making unexpected nursing assignments to clients of the defendant. (Quality Care Service Corporation advertises and provides 24 hour home nursing care services.) On several occasions during that week, plaintiff admits that he instructed his answering service to hold all calls between 11:00 P.M. and 7:30 A.M. Plaintiff was fired shortly after these facts came to the attention of his supervisor.

Plaintiff does not dispute the foregoing version of the facts as found by the ALJ. Nor does he (or could he) deny that, at least in theory, his actions were a violation of company policy and were legitimate grounds for discharge, as the ALJ determined. Plaintiff argues, however, that this reason for his dismissal was discriminatorily applied because many other employees

cites as evidence of discrimination the allegation that defendant never gave plaintiff (unlike certain white employees) the option of resigning before he was fired. The same assertion also appears in the affidavit filed by plaintiff on the same day (at paragraph 38).

who improperly put some calls on hold were not discharged.

The short answer to plaintiff's argument is the fact, undisputed by plaintiff, that no other employee with the responsibility for being on call ever put *emergency* calls on hold, or advised plaintiff to do so. ALJ DiLorenzo made that same point:

Finally it is noted that while claimant has admitted that he was not available for taking calls certain hours of the week when he was required to be available that he contends that such was based on conversations with another employee previously handling such matter. However the evidence establishes that such other employee at least advised the claimant such person had been available for emergency calls. There is no evidence that claimant was available even on such limited basis during substantial portions of the time involved.

Now that discovery is virtually completed in this action, plaintiff has not produced the name of any other employee who was retained or rehired after putting emergency calls on hold. By definition, "emergency" calls are especially serious, as is the failure to be available for them. There is no inconsistency, either in logic or in law, for an employer to deal more seriously with the only employee who instructed his answering service to intercept even emergency calls during the night.

Nevertheless, plaintiff argues that defendant's reliance on this cause for his discharge was "pretextual", since the practice of putting at least non-emergency calls on hold at night was ubiquitous among the firm's employees. Defendant concedes that putting *any* calls on hold during 24 hour availability assignments was technically a violation of company policy. Therefore, plaintiff reasons, consistency would require defendant to discharge every employee guilty of any infraction of those

Fortunately, I need not resolve this inconsistency to decide the pending motions. For the reasons stated below, defendant would be entitled to summary judgment even if I accept plaintiff's affidavit and disregard his sworn testimony.

rules, however slight. In the words of his affidavit (at para. 19):

> If it was against company policy for anyone to put any call on hold during the night for any purpose whatsoever, as Mrs. DuCharme testified to in the unemployment hearing, all the employees in the Buffalo, Rochester and Syracuse offices having responsibility for on call would have had to have been terminated—just like me. They of course were not.

I disagree. No inference of irregularity or pretext can be drawn from the failure of an employer to replace his entire workforce for the sake of punishing every breach, however slight, of a single company rule. Practicality prohibits such extreme measures, and consistency does not require them; an employer is entitled to differentiate extreme cases "from others involving employees who committed less serious breaches of company policy or rules of the workplace". *Otis v. Inland Container Corp., supra*, 25 F.E.P. cases at 1282. (It is also noteworthy that one of the employees who was retained after putting non-emergency calls on hold was Adele Johnson, a black woman, which further undermines plaintiff's suggestion that defendant selectively enforced its rules as a pretext for racial discrimination.)

## II.

■ In summary, plaintiff has not produced any evidence that the reasons for his discharge were discriminatorily applied, or that any white employees who had engaged in similar conduct were not discharged.[7] Nor has plaintiff provided any other evidence sufficient to raise a genuine question as to whether his discharge may have been racially motivated. Plaintiff relies heavily upon the allegations of his affidavit in attempting to show that, even before his discharge, Ms. DuCharme always treated him worse than other employees during his two month period of employment with defendant. Yet all of those allegations, even if accepted as true, would indicate at most simply that Ms. DuCharme and plaintiff did not get along. Plaintiff has produced no evidence that her personal dislike for him was because of his race, and all the evidence points to a contrary conclusion.

Indeed, plaintiff's suggested inference of discriminatory intent is almost conclusively belied by the basic facts of this case which lie beyond dispute. By plaintiff's own admission, Ms. Mary Ellen DuCharme, Area Manager for defendant, was responsible for his discharge. He does not allege that any of defendant's other employees or supervisors ever abused him or treated him unfairly in any way. Yet, according to plaintiff's own affidavit (para. 6), Ms. DuCharme was the same person who made the decision to hire him, only two months before she fired him. Plaintiff has carefully avoided any attempts at explaining why the woman who allegedly fired him because he was black ever hired him in the first place.

7. That factor, standing alone, is highly damaging to plaintiff's case, but it is not necessarily fatal. Defendant has incorrectly argued that, given the fact that defendant had cause to discharge plaintiff, "the only way" plaintiff could prove racial discrimination would be to demonstrate that similarly situated white employees committed the same acts but were not terminated. (Defendant's Memorandum of Law, pg. 4; affirmation of defendant's attorney, pg. 9.) On that view, a black plaintiff could never prove discrimination if he was fired for an offense which no white employees had ever committed, no matter how compelling the other evidence of discriminatory intent might be.

Contrary to defendant's argument, even in the absence of evidence of discriminatory application, the plaintiff must have the opportunity to demonstrate that the proffered reason was pretextual, "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence". *Burdine, supra*, 450 U.S. at 256, 101 S.Ct. at 1095. In the present case, however, no such evidence has been produced. Plaintiff is collaterally estopped by the findings of the ALJ from arguing that the defendant's explanation is "unworthy of credence". The only question remaining, therefore, is whether plaintiff has come forward with any evidence that a discriminatory reason more likely motivated the defendant. For the reasons set forth below, I conclude that he has not.

■ Plaintiff's allegations of racial discrimination are also substantially undermined by the testimony of Adele Johnson, a former acquaintance of plaintiff's who was hired by defendant at his recommendation. Plaintiff relies on an affidavit taken from Adele Johnson on September 12, 1984, in which she relates that "I saw and heard loud, harsh exchanges by Mrs. DuCharme toward Mr. Warren in connection with report deadlines. Ms. DuCharme had a dislike of Mr. Warren." (Para. 6). As Ms. Johnson subsequently clarified in her later affidavit on September 20, 1984, however, (pg. 2):

> What I wish to emphasize here, however, is that I believe that race had *nothing whatsoever* to do with these exchanges or the personality conflicts between Mr. Warren and Ms. DuCharme. I am black and I always felt Ms. DuCharme to be helpful and courteous to me. Mr. Warren and Ms. DuCharme just did not seem to get along. [emphasis in original]

Although summary judgment cannot be used to resolve issues of credibility, this Court is compelled to agree with the conclusion succinctly expressed above by Adele Johnson, because plaintiff has not come forward with any evidence which would call that conclusion into question.

■ Summary judgment must be granted with great caution in employment discrimination cases, since questions of discriminatory intent are often impossible to resolve in advance of trial. Nevertheless, I conclude that plaintiff has offered no evidence to counter the defendant's convincing showing that he was discharged for legitimate, non-discriminatory reasons. He has likewise failed to produce any evidence that race played any part in the hostility and mistreatment he allegedly suffered at the hands of the woman who hired him. Under these circumstances, summary judgment for the employer is appropriate. *Brownlow v. General Services Employees,* 35 F.E.P. Cases 568 (N.D.Ill.1984); *Mack v. W.R. Grace Company,* 578 F.Supp. 626, 631 (N.D.Ga.1983); *Otis v. Inland Container Corp.,* 25 F.E.P. Cases 1280 (N.D. Ill.1981); *Martinez v. Bethlehem Steel Corp.,* 496 F.Supp. 1002 (E.D.Pa.1979). The granting of summary judgment is not precluded by plaintiff's conclusory opinion, however sincere, that he was the victim of racial discrimination. *Gatling v. Atlantic Richfield Company,* 577 F.2d 185 (2d Cir. 1978), *cert. denied,* 439 U.S. 861, 99 S.Ct. 181, 58 L.Ed.2d 169 (1978); *Fraser v. Doubleday & Co., Inc.,* 587 F.Supp. 1284 (S.D. N.Y.1984).

## CONCLUSION

■ Defendant's motion for summary judgment on both causes of action is granted, and the complaint is dismissed. Accordingly, all of plaintiff's cross-motions are denied.[8] The cross-motions by both parties for attorney's fees are also denied.

ALL OF THE ABOVE IS SO ORDERED.

---

**8.** In opposition to defendant's motion for summary judgment, and in support of his own cross-motion for summary judgment, plaintiff has argued that the testimony presented to the New York State Unemployment ALJ is inadmissible hearsay in the present action. Accordingly, plaintiff has requested an order "precluding the defendant from using as evidence *any* portion of the transcript of plaintiff's unemployment application proceedings" (plaintiff's notice of motion, p. 1; emphasis added). As plaintiff argues in his affidavit, "[A]s I understand it, the hearsay rule does not permit [the] use ... of the testimony I and other witnesses have given relating to my claims." (Plaintiff's affidavit, para. 2).

With respect to the admissibility of his own prior testimony, plaintiff has clearly been misadvised. Plaintiff's own statements are never hearsay when used against him. Federal Rules of Evidence 801(d)(2)(A).

Plaintiff also argues at length that the unemployment hearing testimony given by Ms. DuCharme (now deceased) is inadmissible hearsay, and that defendant therefore has no defense to this lawsuit, or to plaintiff's motion for summary judgment. I need not decide that question, since plaintiff has failed to meet his burden of producing a genuine issue of fact for trial. Defendant's motion for summary judgment relies only on the findings of fact and opinion reached by the ALJ, which are not excluded by the hearsay rule. Federal Rules of Evidence, 803(8)(C).