**Ronald STOKES, Plaintiff,**

v.

**GENERAL MILLS, INC., Defendant.**

**No. CIV–89–0560S.**

United States District Court,
W.D. New York.

Jan. 11, 1991.

Charles L. Davis, Buffalo, N.Y., for plaintiff.

Anne Smith Simet, Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, N.Y., for defendant.

## DECISION AND ORDER

SKRETNY, District Judge.

### INTRODUCTION

Presently before this Court are defendant's motion for summary judgment and plaintiff's cross-motion for summary judgment.

Ronald Stokes ("plaintiff") sued General Mills, Inc. ("defendant") in connection with defendant's alleged racially and sexually discriminatory discharge of plaintiff. Plaintiff has alleged three separate causes of action, predicated on Title VII of the Civil Rights Act of 1964 for disparate treatment, 42 U.S.C. § 1981 and New York Executive Law § 290 et seq. On December 19, 1990, this Court dismissed plaintiff's causes of action predicated on 42 U.S.C.

§ 1981 and the New York Executive Law pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1), respectively.

With respect to his remaining Title VII claim, plaintiff, a black male, alleges that defendant terminated his employment for engaging in certain conduct while defendant did not terminate white and female employees found to have engaged in the same conduct. Both parties have moved for summary judgment on plaintiff's Title VII claim.

Conclusion: For the reasons set forth below, this Court hereby grants defendant's motion for summary judgment and denies plaintiff's cross-motion for summary judgment.[1]

### FACTS

The following material facts are not in dispute.

In 1969, plaintiff, a black male, began employment with defendant as a general laborer. Over the years, plaintiff progressed to higher positions, ultimately to electrician. On January 12, 1988, plaintiff was involved in a physical altercation with another employee, Thomas Northington ("Northington").

According to defendant's work rules, embodied in its *Employee Handbook* and posted throughout its plant:

> Engaging in fights, horseplay, practical jokes, gambling, indecency or damaging company property ... will result in ... immediate termination after a complete investigation has been conducted.

Defendant's policy has been to terminate the aggressor in a fight while the nonaggressor is not discharged but subject to a lesser or no penalty. At oral argument it was not disputed that defendant's policy has been to terminate both parties where a fight is verified but the aggressor cannot be determined.

---

**1.** Throughout this decision, this Court will refer to the following documents in abbreviated form as follows: Plaintiff's Statement of Material Facts ("Plaintiff's Fact Statement"); the affidavit of Charles L. Davis ("Davis"); the affidavit of Ivor Baker ("Baker"); and the deposition testimony of Thomas P. Walton which is attached as various exhibits to plaintiff's Cross–Notice of Motion For Summary Judgment (Plaintiff's Exh. #).

On February 16, 1988, defendant discharged plaintiff and Northington after defendant's internal investigation revealed both employees were equally culpable for the fight. Plaintiff and Northington each claimed to have acted in self defense and that the other was the aggressor.

Northington filed a criminal complaint against the plaintiff who was later charged with assault. This charge was subsequently resolved by a Memorandum of Understanding dated March 9, 1988.

On or about May 11, 1988, plaintiff filed a complaint with the New York State Division of Human Rights wherein plaintiff alleged sex discrimination. Plaintiff later filed an amended complaint additionally alleging race discrimination. The Division of Human Rights investigated the complaint but has not yet rendered any decision. However, the complaint has not been dismissed for administrative convenience.

Plaintiff also filed a claim for unemployment insurance benefits with the New York State Department of Labor. On December 20, 1988, after a full hearing at which plaintiff was represented by counsel, an Administrative Law Judge ("ALJ") ruled that plaintiff's actions constituted "misconduct" under the law and that plaintiff's discharge resulted from his own misconduct. Therefore, the ALJ ruled that plaintiff was not entitled to unemployment benefits.

At all times relevant to this lawsuit, plaintiff has been a member of the AFL–CIO and its Local 36 (hereinafter "the union"). In addition, at all relevant times, the union and defendant have been bound by a collective bargaining agreement (the "agreement") governing employees at defendant's Buffalo, New York plant. The agreement provides that the union is the sole bargaining agent for aggrieved employees; the application of any discipline by defendant against an employee may be challenged by the union through the grievance and arbitration procedures contained in Articles 8 and 9 of the agreement.

Pursuant to the agreement, plaintiff challenged his discharge by filing a grievance with the union. Through proper union procedure, the grievance proceeded to binding arbitration.[2] On April 14, 1989, a full hearing proceeded before an arbitrator at which both plaintiff and Northington testified. At the arbitration hearing, plaintiff was represented both by counsel of his choice and separate counsel retained by the union. On July 5, 1989, after concluding that the evidence failed to establish the fight's aggressor with any degree of certainty, the arbitrator ruled that plaintiff "engaged in improper and unacceptable behavior" and "failed to exercise reasonable prudence so as to avoid a confrontation." Moreover, the arbitrator found "no evidence" that "Northington provoked an altercation" with the plaintiff "so as to constitute the [plaintiff] a victim...." Assessing other instances where defendant disciplined employees engaged in fighting, the arbitrator found no evidence that defendant "... applied its no-fighting rule in an inconsistent, or disparate manner."

However, because the evidence failed to identify the aggressor and the arbitrator found as a mitigating circumstance the fact that the fight was plaintiff's first, the arbitrator ruled that discharge of plaintiff was too severe. Subject to a disciplinary suspension of thirty (30) days, the arbitrator ordered plaintiff reinstated and awarded plaintiff straight time back pay in an amount exceeding $31,000.00. The arbitrator expressly rejected plaintiff's request for an award of overtime back pay. On July 20, 1989, defendant reinstated plaintiff with back pay.

On May 5, 1989, plaintiff received a right to sue letter from the United States Equal Employment Opportunity Commission and, subsequently, on May 10, 1989, filed this lawsuit. Plaintiff seeks $1,000,000.00 in compensatory and punitive damages as

---

**2.** Pursuant to § 9.08 of the agreement, an employee unjustly discharged, as determined by the arbitrator, shall be given an opportunity to return to work and be paid for lost time.

Northington filed a similar grievance which proceeded to a separate hearing before a separate arbitrator.

well as other injunctive and declaratory relief.

## TITLE VII

The United States Supreme Court has firmly established the order and allocation of proof in a Title VII disparate treatment employment discrimination case such as now before this Court. Initially, the burden is upon the plaintiff to establish a prima facie case. To establish a prima facie case for discriminatory employment termination, plaintiff must show that

> [h]e is a member of a protected class, that [he] is qualified for the job in question, that the employer rejected or discharged [him] despite [his] qualifications and that the employer sought other applicants for the plaintiff's position.

*Sorlucco v. New York City Police Department*, 888 F.2d 4, 7 (2d Cir.1989) (citing *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)).

Once the plaintiff establishes his prima facie case, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the termination. If defendant provides a valid reason, plaintiff must demonstrate that the defendant's reason for rejection is pretextual. *Sorlucco*, 888 F.2d at 7 (citing *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 255–56, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981)). The ultimate burden of proving discrimination remains with the plaintiff. *Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984).

## SUMMARY JUDGMENT STANDARDS

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The burden is upon the moving party to demonstrate the absence of a material factual dispute. Fed.R.Civ.P. 56(e). Once that burden is met, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.

Civ.P. 56(e). This Court must draw all reasonable inferences in favor of the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970). Moreover, courts should not be reluctant to grant summary judgment in appropriate cases since "one of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986), thereby permitting courts to avoid "protracted, expensive and harassing trials." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985).

This Court approaches a summary judgment motion in the employment discrimination context with caution "since questions of discriminatory intent are often impossible to resolve in advance of trial." *Warren v. Quality Care Service Corp.*, 603 F.Supp. 1174, 1181 (W.D.N.Y.1985) (Telesca, C.J.). Clearly, where plaintiff has met its prima facie case and defendant responds by demonstrating a legitimate nondiscriminatory reason for plaintiff's termination, plaintiff then must show the defendant's proffered reasons were mere pretext for discrimination. If the nonmoving party fails to make this latter showing, however, this Court must grant summary judgment. *See, e.g., Smith v. American Express Co.*, 853 F.2d 151 (2d Cir.1988) (although plaintiff met its prima facie case, since plaintiff provided no admissable evidence to rebut defendant's showing that plaintiff's termination resulted from defendant's articulated non-discriminatory reason, the Second Circuit affirmed the district court's grant of summary judgment in favor of Title VII defendant); *Fair v. Guiding Eyes For The Blind, Inc.*, 742 F.Supp. 151, 156–57 (S.D.N.Y.1990) (even had plaintiff met its prima facie case of sex discrimination, where plaintiff failed to counter defendant's legitimate nondiscriminatory reason for termination as pretext, Court held defendant entitled to summary judgment as a matter of law); *Warren*, 603 F.Supp. at 1181 (Court granted defendant summary judg-

ment where plaintiff offered no evidence countering defendant's "convincing showing" that plaintiff was terminated for legitimate, nondiscriminatory reasons).

## DISCUSSION

This Court doubts that plaintiff has even met his prima facie case since he produces no evidence that defendant sought another applicant for plaintiff's position before plaintiff's ultimate reinstatement. However, in this circuit the elements of a Title VII claim are not rigid; our court of appeals has cautioned against an "overly formalistic interpretation of the elements comprising the prima facie case." *Meiri v. Dacon*, 759 F.2d at 996, n. 9 (fact that a Title VII plaintiff was never replaced after discharge weakened but was not fatal to plaintiff's claim of discrimination).

Even assuming that plaintiff offers evidence sufficient to defeat summary judgment at the prima facie stage, plaintiff has provided this Court no admissible or even credible evidence demonstrating that defendant's proffered legitimate, nondiscriminatory reasons for termination were mere pretext.

Plaintiff relies on two general arguments in support of his contention that defendant discriminated against him.

First, the plaintiff claims that, in his physical altercation with Northington, plaintiff was merely acting in self defense and Northington was the aggressor. (Plaintiff's Fact Statement, ¶¶ 11–12; Davis, ¶¶ 6–13). As noted above, it remains undisputed that defendant's internal investigation revealed neither party to be the single aggressor, (Baker, ¶ 12), and that subsequently both an arbitrator and an administrative law judge independently reviewed the evidence and concluded not only that plaintiff was not a nonaggressor, but that *plaintiff* had engaged in misconduct.[3] This Court considers the findings of

the arbitrator and administrative law judge probative evidence. *See Fitch v. R.J. Reynolds Tobacco Co.*, 675 F.Supp. 133, 138 (S.D.N.Y.1987) (in Title VII case, district court may consider previous findings of administrative law judge as evidence); *Bollenbach v. Board of Education of Monroe–Woodbury Central School District, et. al.*, 659 F.Supp. 1450, 1470 (S.D.N.Y.1987) (in Title VII case, district court may consider previous findings of arbitrator as evidence).

Plaintiff stresses defendant's policy of terminating the aggressor in a fight but not terminating the nonaggressor. Plaintiff argues that since plaintiff was not the aggressor—an unsupported conclusion this Court therefore rejects—defendant ignored its own policy when it terminated plaintiff. However, since defendant concluded that a violent physical altercation occurred and that neither plaintiff nor Northington could be determined to be the lone aggressor or the lone nonaggressor, defendant's discharge of both plaintiff and Northington was consistent with its work rules and policy. In fact, in his vain attempt to characterize himself as a nonaggressor,[4] plaintiff misses the point entirely; the relevant issue with respect to the disparate treatment claim is whether, after determining that plaintiff engaged in misconduct, defendant applied its policy unevenly toward plaintiff.

Second, plaintiff alleges that in other instances defendant treated white and female employees engaged in fighting differently than plaintiff. However, as the discussion below indicates, in each of the other fighting incidents which the plaintiff cites for the proposition that defendant treated white and female fight participants differently, credible evidence not only factually distinguishes these incidents, but shows that defendant fashioned its disciplinary measures according to the particular facts

---

**3.** As noted above, the arbitrator also found no evidence that defendant ". . . applied its no-fighting rule in an inconsistent or disparate manner."

**4.** Plaintiff in effect asks this Court to second guess three independent determinations—two

arrived at *independently* by the ALJ and an arbitrator after full hearings and at which plaintiff was represented by counsel—that plaintiff did not act merely in self defense and did engage in misconduct and/or "unacceptable behavior."

of each case and the culpability of the fight participants.

Other than plaintiff's counsel's conclusory affidavit, the only supporting evidence plaintiff provides this Court to demonstrate disparate treatment is the deposition testimony of defendant's plant manager Thomas P. Walton ("Walton"). Walton, however, was not directly responsible for investigating the fighting incidents involving other employees upon which plaintiff relies; his role in any post-fight investigation was limited to at most a second hand review of the results of the investigation. (*See, e.g.,* Plaintiff's Exh. 12, p. 13.) In fact, Walton's deposition testimony establishes that Walton had no personal knowledge concerning most, if not all, of the facts relating to these incidents involving other employees. Rather, defendant's Human Resource Department was responsible for conducting any post fight investigation. (Plaintiff's Exh. 11, p. 11). By contrast, defendant offers the sworn affidavit of Ivor Baker ("Baker"), its Assistant Human Resources Manager. Baker's duties included responsibility for investigating fighting incidents amongst defendant's employees. Baker swears to personal knowledge concerning all identified fighting incidents.

For example, plaintiff alleges employees Violet Lewis and Arlene Polak, both white females and found by defendant to have engaged in fighting, were merely suspended and allowed to return to work although an eyewitness claimed that Ms. Polak was the clear aggressor. (Plaintiff's fact statement, ¶ 7).[5] However, at deposition Walton testified that he was not involved in the investigation of the incident between Lewis and Polak. (Plaintiff's Exh. 12, p. 14). According to the sworn testimony of Ivor Baker, the official at defendant's plant responsible for investigating this incident, since no credible evidence existed that a fight even occurred, defendant and the union resolved to reinstate both employees without back pay treating the incident as an unpaid suspension (thereby rendering binding arbitration unnecessary). (Baker, ¶ 21). Thus, in that case the employees were treated similarly to plaintiff, although plaintiff did receive back pay while those employees did not.

Plaintiff further alleges employees Rene Clemons and Charlotte Andrews, both black females, were involved in a fight, terminated and subsequently only Clemons was later reinstated because she was determined to be the nonaggressor. (Plaintiff's Fact Statement, ¶ 6). At his deposition, Walton testified that he had no recollection of the disciplinary disposition of this incident and that at the time of the incident he was a production manager. (Plaintiff's Exh. 21, p. 35). Moreover, in that case, defendant determined that Clemons was the nonaggressor and thus was reinstated after a two month suspension. The union did not take that matter to arbitration. (Baker, ¶ 22).

Plaintiff further alleges that Milton Brown, a black employee, was struck by Dominic Dantonio, a white employee, and though Dantonio "was the aggressor" he was not terminated. (Plaintiff's Fact Statement, ¶ 8). However, defendant's investigation determined that no fight could be verified. Therefore, both employees were briefly suspended without pay. (Baker, ¶ 23).

Plaintiff also alleges that employee Rich Porkney [sic] "was involved in three fights with gentlemen by the names of Kaczor and Black," presumably also employees, although defendant terminated none of those employees. (Plaintiff's Fact Statement, ¶ 9). Plaintiff does not allege that any of these employees was or was not a member of a protected class. However, defendant's investigation revealed that no fight could be verified and the matter was resolved, with union involvement, by a brief suspension without pay. (Baker, ¶ 24).

---

5. This Court notes contradictions throughout plaintiff's own papers. For example, in his Cross–Notice of Motion, plaintiff claims that employees Lewis and Polak were suspended for fighting (¶ 7). However, in his affidavit, Davis claims that Lewis and Polak were discharged for fighting. (¶ 17).

318

This Court need not further address plaintiff's bare and unsupported allegations; plaintiff has failed to provide this Court even a modicum of credible evidence to rebut defendant's comprehensive evidence that defendant's Human Resource Department, in accordance with its work rules and often in conjunction with the union, disciplined employees engaged in fighting and other misconduct according to the specific facts in each case. Furthermore, defendant's discipline of plaintiff was not only consistent with defendant's policy and practice applied against all employees engaged in fighting but the disciplinary measure taken against plaintiff was responsive to plaintiff's deserving conduct. In sum, plaintiff has made zero showing that defendant's proffered justification is pretextual or that plaintiff's race or sex, in any way, made a difference. *See, Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989).

### CONCLUSION

For the reasons set forth above, this Court grants defendant General Mills, Inc.'s motion for summary judgment and denies plaintiff Ronald Stokes' cross-motion for summary judgment.

### ORDER

IT HEREBY IS ORDERED, that defendant General Mills, Inc.'s motion for summary judgment is GRANTED;

FURTHER, that plaintiff Ronald Stokes' cross-motion for summary judgment is DENIED; and

FURTHER, that the Clerk of the United States District Court for the Western District of New York is directed to enter final judgment for defendant and to dismiss plaintiff's action in accordance with this decision.

SO ORDERED.