**Anthony OBIAJULU, Plaintiff,**

v.

**CITY OF ROCHESTER, Department of Law, et al, Defendants.**

No. 95–CV–6192L.

United States District Court, W.D. New York.

Aug. 28, 1997.

John Joseph Ferlicca, Rochester, NY, Wayne R. Gradl, Gradl, Polowitz, Schwach and Faust, LLP, Buffalo, NY, for Anthony Obiajulu.

Anthony Obiajulu, Scotch Plains, NJ, pro se.

Margaret A. Clemens, Nixon, Hargrave, Devans & Doyle, LLP, Rochester, NY, for City of Rochester, Dept. of Law.

## DECISION AND ORDER

LARIMER, Chief Judge.

Plaintiff, Anthony Obiajulu, commenced this employment discrimination action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.;* 42 U.S.C. §§ 1981, 1982, 1983 and 1985; the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.;* and the New York State Human Rights Law, N.Y. Exec. L. § 296. Plaintiff alleges defendants terminated his employment with the City of Rochester ("the City") in 1994 on account of his race and what defendants perceived as a disability, and to retaliate against him because of his complaints of discrimination and because his wife had brought an employment discrimination suit against defendants in 1993. Plaintiff has filed a motion to collaterally estop defendants from asserting that he was terminated for misconduct or incompetency, based on two determinations issued by an Administrative Law Judge ("ALJ") of the New York State Department of Labor and by the New York State Department of Civil Service ("Civil Service").

## BACKGROUND

Following his termination from employment, plaintiff applied to the Department of Labor for unemployment benefits. By notice dated November 4, 1994, plaintiff was declared eligible for benefits because the Department of Labor found no indication of any intentional misconduct on plaintiff's part. Plaintiff's Ex. A. On November 17, 1994, the City's claims representative wrote a letter to the Department of Labor requesting a redetermination, or in the alternative, a hearing before an ALJ. The letter stated that plaintiff was discharged for cause because of disciplinary problems. Plaintiff's Ex. B.

On November 22, 1994, a hearing was held before an ALJ. The ALJ issued his decision on December 22, 1994, finding that "[t]he problems [between plaintiff and defendant] seem to relate to routine misunderstandings and normal problems involving interactions between individuals," and that "[t]he evi-dence d[id] not establish any deliberate misconduct on [plaintiff's] part." Plaintiff's Ex. D. The ALJ therefore "conclude[d] that [plaintiff's] employment ended under non-disqualifying conditions."

The City appealed the ALJ's decision to the New York State Unemployment Insurance Board ("the Board"). In a letter to the Board dated January 9, 1995, the City stated that plaintiff's "discharge was solely as [sic] the result of claimant misconduct." Plaintiff's Ex. E.

On April 28, 1995, the Board affirmed the ALJ's decision. The Board found that plaintiff "was involved in several incidents which caused the [City's] Corporation Counsel to make the decision to discharge him." Plaintiff's Ex. G. The Board further found that plaintiff was discharged for several actions that exhibited "poor judgement" on his part, and that "[w]hile these incidents may have given the employer reason to fire [plaintiff], ... they d[id] not constitute any more than poor judgement and as such d[id] not rise to the level of misconduct."

The Civil Service determination relates to plaintiff's application for employment with Civil Service in October 1994. Civil Service sent plaintiff a notice informing him that he could not be appointed to a position at that time because he answered "Yes" to the following question: "Were you ever dismissed or discharged from any employment for reasons other than lack of work or funds, disability or medical condition?" Plaintiff's Ex. H. Included with the notice were forms for plaintiff to fill out so that Civil Service could investigate the matter.

In the course of Civil Service's investigation, it obtained certain information about plaintiff from the City. The City's Corporation Counsel informed Civil Service that plaintiff had been "[t]erminated for repeated problems with performance," Plaintiff's Ex. I, and sent Civil Service various documentation as well.

On April 18, 1995, Civil Service sent plaintiff a "Notice of Possible Disqualification" stating that his actions while employed by the City "raise[d] serious questions concerning [his] ability to work as part of a legal

team." Plaintiff's Ex. M. The notice also gave plaintiff fifteen business days to submit materials by way of explanation, which plaintiff did. After reviewing plaintiff's materials, on June 21, 1995, Civil Service issued a "Notice of Restriction Removal" stating that plaintiff's explanation had been "found satisfactory" and that plaintiff's "name c[ould] now be certified since [he] ha[d] passed" his civil service examinations. Plaintiff's Ex. Q.

## DISCUSSION

■ Plaintiff contends that based upon the Department of Labor and Civil Service determinations, defendants should be collaterally estopped from asserting that plaintiff was terminated for misconduct, incompetency, or any other legitimate non-discriminatory reason. This contention is directly contrary to controlling case law.

The Supreme Court addressed the issue of whether a federal court should give preclusive effect to a state administrative finding in *University of Tennessee v. Elliott,* 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986). In *Elliott,* the plaintiff sued his employer for alleged race discrimination, and also pursued administrative relief under state law. While the lawsuit was pending, a state ALJ found that the employer's charges of inadequate work performance and misconduct were not racially motivated. The employer then moved for summary judgment in the federal lawsuit on the ground that the ALJ's findings should be given preclusive effect. The district court granted the motion, and the Court of Appeals for the Sixth Circuit reversed. On appeal, the Supreme Court agreed with the Sixth Circuit that the federal full-faith-and-credit statute, 28 U.S.C. § 1738, which deals with the preclusive effect to be given to judgments and records of state courts, does not apply to unreviewed state administrative proceedings. *Id.* at 798, 106 S.Ct. at 3225–26. The Court also went on to hold that "when a state agency 'acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." *Id.* at 799,

106 S.Ct. at 3226 (quoting *United States v. Utah Constr. & Mining Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966)). *See also Astoria Fed. Sav. and Loan Ass'n v. Solimino,* 501 U.S. 104, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991) (judicially unreviewed findings of state administrative agency made with respect to age discrimination claim have no preclusive effect on federal proceedings).

Applying the principles laid down in *Elliott* to the case at bar, plaintiff's contention that the ALJ's and Civil Service's findings should be given preclusive effect in this action clearly fails, because those findings would not be given preclusive effect by New York State courts. First, New York Labor Law § 623(2), which is part of New York's Unemployment Insurance Law, N.Y. Lab. L. §§ 500–643, provides that "[n]o finding of fact or law contained in a decision rendered pursuant to this article by a referee, the appeal board or a court shall preclude the litigation of any issue of fact or law in any subsequent action or proceeding ...," with certain exceptions that do not apply here. Pursuant to this statute, New York courts have refused to give preclusive effect to administrative findings in unemployment insurance proceedings. *See, e.g., Wooten v. New York City Dep't of Gen. Services,* 207 A.D.2d 754, 617 N.Y.S.2d 3 (1st Dep't 1994) (refusing to give preclusive effect to Unemployment Insurance Board's finding that petitioner was terminated in retaliation for filing complaint), *leave to appeal denied,* 84 N.Y.2d 813, 622 N.Y.S.2d 915, 647 N.E.2d 121 (1995). Plaintiff's reliance on *Warren v. Quality Care Serv. Corp.,* 603 F.Supp. 1174 (W.D.N.Y. 1985), is therefore misplaced, since *Warren* was decided prior to both the 1987 amendment of § 643 adding subsection 2 and *Elliott.* Since it is now clear that New York courts would not give preclusive effect to the ALJ's and the Board's findings, pursuant to 28 U.S.C. § 1738, this court must likewise accord those findings no preclusive effect.

■ Even were it not for § 643, the findings in plaintiff's unemployment benefits proceeding would not be entitled to preclusive effect in this discrimination action. "Under New York law, the doctrine of collateral es-

toppel, or issue preclusion, applies when a litigant in a prior proceeding asserts an issue of fact or law in a subsequent proceeding and (1) the issue 'has necessarily been decided in the prior action and is decisive of the present action,' and (2) there has been 'a full and fair opportunity to contest the decision now said to be controlling.'" *Giakoumelos v. Coughlin,* 88 F.3d 56, 59 (2d Cir.1996) (quoting *Schwartz v. Public Administrator,* 24 N.Y.2d 65, 71, 298 N.Y.S.2d 955, 246 N.E.2d 725 (1969)).

Discrimination, however, was not an issue in either the unemployment proceedings or plaintiff's civil service application. In fact, the Second Circuit rejected an argument virtually identical to Obiajulu's for that very reason in *Fondel v. Grumman Aerospace Corp.,* 884 F.2d 657 (2d Cir.1989). In *Fondel,* the plaintiff sued his former employer based on alleged race discrimination, and the employer counterclaimed for relocation expenses based on a written agreement between the parties by which the plaintiff agreed that if he were "removed for cause" within the first year of his employment, he would reimburse the employer for any relocation expenses that the employer had provided to him. After a bench trial, the district court dismissed the plaintiff's claim and awarded the defendant damages on the counterclaim. Affirming the district court's judgment, the Second Circuit held that an ALJ's finding that the plaintiff was not guilty of misconduct that for unemployment insurance purposes did not collaterally estop the defendant from pursuing its counterclaim. Noting that "there was no identity in the pertinent issues" in the unemployment proceeding and the federal lawsuit, the court stated that "[u]nder New York law an employee's conduct may be such that it justifies a 'for cause' dismissal, yet not rise to the level of misconduct that disqualifies him from unemployment insurance." *Id.* at 659. That reasoning applies with equal force to the case at bar. *See also Hernandez v. New York City Law Dep't Corp. Counsel,* No. 94 Civ. 9042, 1997 WL 27047 *16 (S.D.N.Y. Jan. 23, 1997) ("even an unemployment insurance decision affirmed by a New York court in an Article 78 proceeding will not be given preclusive effect in this Circuit because of the difference in the issues involved") (citing *Hill v. Coca Cola Bottling, Co. of New York,* 786 F.2d 550, 553 (2d Cir.1986)); *Guiden v. Southeastern Pub. Serv. Auth. of Virginia,* 760 F.Supp. 1171, 1177 (E.D.Va.1991) ("because the standard involved in proving misconduct as a legitimate nondiscriminatory reason for discharge in a Title VII action is not the same as the test applied in an unemployment compensation hearing to determine misconduct for purposes of denial of unemployment compensation benefits, the issues are not identical. Preclusion is therefore inappropriate"); *Gore v. R.H. Macy & Co.,* No. 86 CIV. 9684, 1989 WL 65561 (S.D.N.Y. June 13, 1989) (ALJ's finding that plaintiff was not guilty of misconduct for unemployment insurance purposes was not entitled to preclusive effect in employment discrimination action, because issues were not identical and defendant did not have full and fair opportunity to litigate, since defendant's incentive to litigate unemployment claim was "minuscule" compare to liability it faced in discrimination action); *Wilson v. Supreme Color Card, Inc.,* No. 87 CIV. 0037, 1988 WL 61914 *2 (S.D.N.Y. June 6, 1988) (refusing to give preclusive effect in employment discrimination action to ALJ's factual findings in unemployment insurance proceeding, since in that proceeding, "it was Wilson's conduct, rather than Supreme's, that was being judged").

This ruling is consistent with that of federal courts of appeals throughout the country, which have "unanimously concluded that unreviewed administrative agency findings can never be accorded preclusive effect in subsequent Title VII proceedings." *Roth v. Koppers Indus., Inc.,* 993 F.2d 1058, 1062 (3d Cir.1993). Since the *Elliott* decision, then, "it has been well established ... that an unreviewed state administrative determination—including those of a state human rights division or unemployment insurance board—does not preclude de novo federal court consideration of a Title VII claim ..." *Hernandez,* 1997 WL 27047 *16 (collecting cases).

Moreover, the findings at issue here clearly left open the possibility that plaintiff was terminated for reasons other than discrimination. Indeed, the Board found that plaintiff had exhibited "poor judgement" that

"may have given the employer reason to fire" him. Likewise, Civil Service found only that it was satisfied by plaintiff's explanation, and made no explicit finding about why plaintiff was terminated.

In addition, the findings by Civil Service are even less deserving of preclusive effect than the ALJ's. Civil Service was not acting in a judicial capacity when it concluded that plaintiff's explanation for his termination was satisfactory, and it certainly could not be said that defendants "litigated" the matter.

## CONCLUSION

Plaintiff's motion for collateral estoppel (Item 88) is denied.

AFTER REVIEWING THE PLEADINGS AND DOCUMENTS IN THIS CASE, I BELIEVE THAT THE PARTIES SHOULD TAKE SERIOUS EFFORTS TO RESOLVE AND SETTLE THE CASE. THEREFORE, THIS CASE IS REFERRED TO SENIOR UNITED STATES DISTRICT JUDGE MICHAEL A. TELESCA SOLELY FOR THE PURPOSE OF SETTLEMENT DISCUSSIONS, ACCORDING TO A SCHEDULE AND PROCEDURE ADOPTED BY JUDGE TELESCA.

IT IS SO ORDERED.